**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 10 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSUE PEREZ-REBOLLAR, | No. 13-74211 |
| Petitioner, | Agency No. A205-920-543 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 17, 2017[**]
San Francisco, California

Before: WARDLAW and GOULD, Circuit Judges, and SHEA,[***] District Judge.

Josue Perez-Rebollar, a native and citizen of Mexico, petitions for review of

the Board of Immigration Appeals' ("BIA") decision affirming the immigration

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Edward F. Shea, Senior United States District Judge for the Eastern District of Washington, sitting by designation.

judge's ("IJ") denial of his applications for withholding of removal and protection under the Convention Against Torture ("CAT"). Because the BIA adopted the IJ's decision but also put forth its own reasoning, we review both decisions. *See Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014). We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition for review.

**1.** Substantial evidence supports the IJ's adverse credibility determination, which the BIA affirmed. Under the REAL ID Act credibility standards, the IJ was required to assess Perez's credibility by looking at the totality of the circumstances. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Shrestha v. Holder*, 590 F.3d 1034, 1039–40 (9th Cir. 2010). These include, among other things, the "consistency" and "inherent plausibility" of his testimony. *Shrestha*, 590 F.3d at 1040. The IJ was required to support his adverse credibility finding by pointing to "specific instances in the record." *Id.* at 1042.

The IJ properly relied on and cited three inconsistences in Perez's testimony, as well as an implausible statement, to explain why he found Perez's testimony about his 2013 conviction not credible. Perez gave conflicting answers as to whether he lived in the apartment where police found drugs and firearms at the time of his arrest. Despite giving police the names of two people living in that apartment, he claimed during his hearing not to know the names of anyone who

2

lived there. Moreover, though Perez initially claimed during his hearing not to know the names of the drugs he sold, he later acknowledged that he had sold marijuana, crack cocaine, cocaine, and heroin. Further, the IJ noted that Perez testified, implausibly, that he had not purchased the drugs he sold but received them for free. However, even if Perez had been deemed credible, that determination would not have altered the IJ's conclusion that his conviction was particularly serious.

2.     The agency did not abuse its discretion by concluding that Perez's conviction was particularly serious. The agency properly found that "the nature of the conviction, the underlying facts and circumstances[,] and the sentence imposed justif[ied] the presumption that [Perez was] a danger to the community." *Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) (en banc).

The agency concluded that Perez's conviction was particularly serious because the police report from his arrest indicated that he was "seen selling drugs in an apartment parking lot"; "admitted to the police that he had been selling crack cocaine, cocaine base, heroin, and marijuana"; "admitted making 28 sales, earning $100-150 per day, over the course of 3 weeks"; and "admitted living in apartment 38 for 3 weeks with 2 others, where heroin, methamphetamine, crack cocaine, marijuana, scales, packing materials, and 10 firearms were found."

3

The agency's findings were proper. *See Perez-Palafox v. Holder*, 744 F.3d 1138, 1143 (9th Cir. 2014) (describing the BIA's determination that a conviction for transportation of methamphetamine was particularly serious); *Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987) ("There is no question that this circuit has ratified the BIA's consistent view that convictions for drug possession and trafficking are particularly serious . . . ."). Though Perez contends that the seriousness of his conviction was diminished by his lenient sentence and the fact that he sold drugs to help his mother, the BIA has established that such circumstances are accorded little and no weight, respectively. *See In re N–A–M–*, 24 I. & N. Dec. 336, 343 (BIA 2007) (explaining that the "sentence imposed is not a dominant factor" in determining whether a conviction was particularly serious); *Matter of G–G–S–*, 26 I. & N. Dec. 339, 343 (BIA 2014) (noting that the determination of seriousness "does not involve an examination of an alien's personal circumstances and equities, such as family or community ties").

3.    Substantial evidence supports the agency's denial of deferral of removal under CAT. To receive CAT protection, Perez bore the burden of proving that it was "more likely than not that he . . . would be tortured if removed" to Mexico. *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) (alteration in original) (quoting *Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001)). Though "country

4

conditions alone can play a decisive role" in granting CAT relief, *Kamalthas v. INS*, 251 F.3d 1279, 1280 (9th Cir. 2001), Perez needed to show that the conditions were such that torture was likely under the "*specific* circumstances" of his case, *Go v. Holder*, 640 F.3d 1047, 1054 (9th Cir. 2011) (emphasis in original).

The country condition reports in the record did not support a likelihood of future torture. Though they showed violence related to drug trafficking in Mexico, they did not show that Perez was specifically at risk. His contention that drug cartels or criminal gangs would target him because he previously lived in the United States, and thus would be perceived as wealthy, was unsupported. In addition, that argument was contradicted by the fact that his family in Mexico has not been harmed despite it being known that they are related to persons in the United States.

**PETITION FOR REVIEW DENIED.**