NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 31 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



JOSE ROBERTO GARCIA AGUILAR,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 23-986

Agency No. A206-402-940

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 13, 2024
Pasadena, California

Before: COLLINS, H.A. THOMAS, and JOHNSTONE, Circuit Judges.

Jose Roberto Garcia Aguilar, a citizen of Mexico, petitions for review of a

decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from

a decision of an Immigration Judge ("IJ") denying his applications for asylum,

withholding of removal, and protection under the Convention Against Torture

("Torture Convention"). We have jurisdiction under § 242 of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1252. We review the agency's legal

conclusions de novo and its factual findings for substantial evidence. *Davila v.*

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

*Barr*, 968 F.3d 1136, 1141 (9th Cir. 2020). Under the latter standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We deny the petition.

1. The BIA and the IJ concluded that Garcia Aguilar was statutorily barred from being granted asylum or withholding of removal because he had been convicted of a "particularly serious crime." *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). Specifically, Garcia Aguilar had been convicted in 2015 of "willfully inflict[ing] corporal injury" on the "mother . . . of the offender's child" in violation of California Penal Code § 273.5(a), (b)(4) (2015), and he was sentenced to 170 days in jail and three years of probation. In concluding that his offense was "particularly serious," the IJ expressly rejected, as not credible, the victim's testimony that "she did not sustain any injuries" from the charged incident. On appeal to the BIA, Garcia Aguilar challenged this adverse credibility determination, but the BIA held that it did not need to resolve that issue because, "even accepting as credible the wife's testimony that she did not sustain any injuries in the domestic incident," the BIA's de novo assessment of the seriousness of the offense led it to conclude that "the facts and circumstances underlying the crime support a determination that the offense was a particularly serious crime."

Garcia Aguilar contends that, in so ruling, the BIA improperly applied de

2

novo review to the factual findings of the IJ. We reject this contention. It is not improper for an appellate tribunal to conclude that it does not need to resolve, under deferential review, a party's challenge to a particular factual finding because, even if the point is resolved in the challenger's favor, it would not make a difference to the ultimate outcome. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("[C]ourts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). That is what the BIA did here. Even taking the victim's testimony as true in its entirety, including her assertion that she had no injuries, the BIA noted that the victim had also conceded that she had been taken to the emergency room after the incident; that she had been "in pain" because Garcia Aguilar "had pushed [her] very hard"; and that she "f[e]ll to the ground" from that push. The BIA properly took those points as true and then appropriately applied de novo review in assessing whether, in light of the victim's testimony and the other, unchallenged facts found by the IJ, the offense was particularly serious. *Perez-Palafox v. Holder*, 744 F.3d 1138, 1145 (9th Cir. 2014) (stating that the "application" of the legal test for determining whether an offense constitutes a particularly serious crime "to the underlying facts is a legal conclusion and not a factfinding endeavor").

2. Substantial evidence supports the agency's rejection of Garcia Aguilar's request for relief under the Torture Convention.

To be eligible for such relief, an alien must show that he would "more likely than not" be "subject to harm amounting to torture . . . by or with the acquiescence of a public official" if returned to his home country. *Garcia v. Wilkinson*, 988 F.3d 1136, 1147 (9th Cir. 2021). Garcia Aguilar, who suffers from mental illness, argues that he will likely suffer torture in a Mexican mental institution if he loses access to his medication in Mexico, displays symptoms of mental illness, comes to the attention of Mexican police, and is then placed by the police in a mental institution.[1] Because Garcia Aguilar's theory of torture rests on the occurrence of a "hypothetical chain of events," he cannot receive relief under the Torture Convention unless he shows that "each link in the chain is 'more likely than not to happen.'" *Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1154 (9th Cir. 2022) (citation omitted).[2]

Substantial evidence supports the agency's determination that Garcia Aguilar's causal chain failed because he had not shown a likelihood that, if removed to Mexico, he would lose access to the mental-health medication he is

---

[1] The IJ held, and the Government does not challenge for the purposes of this case, that individuals in Mexican mental institutions experience harm that rises "to the level of torture."

[2] In this court, Garcia Aguilar argues that his claim does not rest on a single chain of events inasmuch as Mexican police may torture him for reasons unrelated to his mental illness. But Garcia Aguilar did not raise any such theory in his briefing to the BIA, and so this new contention is unexhausted. *Abebe v. Mukasey*, 554 F.3d 1203, 1207–08 (9th Cir. 2009) (en banc).

taking.[3] Garcia Aguilar contends that, in reaching this conclusion, the agency improperly disregarded the testimony of his expert witness, Priscilla Rodriguez. While the agency must consider "all evidence relevant to the possibility of future torture" when evaluating a Torture Convention claim, 8 C.F.R. § 1208.16(c)(3), it need not "expressly discuss" in its decision evidence that is "neither highly probative nor potentially dispositive," *Hernandez v. Garland*, 52 F.4th 757, 771 (9th Cir. 2022) (simplified). Here, the agency placed particular weight on record evidence supporting the conclusion that Garcia Aguilar's specific medication was covered under "Mexico's current universal public health insurance program" and would continue to be covered under the planned "new program" in Mexico. Because Rodriguez's testimony was "neither highly probative nor potentially dispositive" on this particular issue, it did not need to be specifically mentioned by the agency. *Id.* (simplified). Her testimony indicated that she had little familiarity with Mexico's national health-insurance program and that she had not reviewed the catalog listing the services it covers. Rodriguez suggested that Garcia Aguilar might have difficulty obtaining a prescription in Mexico, saying that it might

---

[3] We reject Garcia Aguilar's argument that the BIA applied the wrong legal standard when it stated that he had "not establish[ed] that he *would* be unable to obtain the necessary medications in Mexico" (emphasis added). The BIA's decision correctly stated and applied the controlling "more likely than not" standard of proof. *See* 8 C.F.R. § 1208.16(c)(2). Its subsequent comments about what the evidence showed must be understood in context and do not indicate any departure from that standard.

require him to go to an "outpatient clinic" while "accompanied by a family member." But she admitted on cross-examination that she was unaware of any "written policy" setting forth this asserted requirement to be accompanied by a family member.

The agency was well aware of Rodriguez's testimony, because it was extensively discussed in other aspects of the IJ's ruling. Given the limited value of that testimony to the specific issue of Garcia Aguilar's ability to obtain his medication in Mexico, the agency did not err in failing to specifically discuss that testimony with respect to this issue. And, for similar reasons, the agency did not err in failing to specifically mention the particular items of country conditions evidence that Garcia Aguilar cites in his brief in support of his contrary conclusion. *See Hernandez*, 52 F.4th at 771.

**PETITION FOR REVIEW DENIED.**